UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| THOMAS LEE and GLORIA LEE, | : | No: 3:08CV01897 |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| AIG CASUALTY COMPANY, | : | |
| Defendant | : | |

MEMORANDUM OF DECISION AND ORDER

On December 18, 2009, the plaintiffs, Thomas Lee and Gloria Lee, filed a

complaint seeking to compel coverage and recover damages as the result of an alleged

breach of an insurance contract by the defendant, the AIG Casualty Company. The

plaintiffs claim that the defendant failed to properly notify them of the cancellation of

their automobile insurance pursuant to Connecticut General Statutes §38a-343(a). They

also claim violations of the covenant of good faith and fair dealing, the Connecticut

Unfair Insurance Practices Act ("CUIPA") and the Connecticut Unfair Trade Practices

Act ("CUTPA"). The defendant claims that it has fulfilled the requirements of Conn.

Gen. Stat. §38a-343(a) and that the insurance coverage was properly cancelled.

Both the plaintiffs and the defendant have moved for summary judgment. For the

reasons stated below, Plaintiffs' Motion for Summary Judgment (doc. # 61) is

GRANTED in part and DENIED in part, and Defendant's Motion for Summary

Judgment ( doc. # 60) is GRANTED in part and DENIED in part.

1

I. Background

The plaintiffs have been insured under multiple insurance policies written by the defendant company. Among those policies was a renewable personal automobile insurance policy for the cars owned by the plaintiffs. The defendant issued renewal personal automobile policy number AIG PCG 0007906716 for the policy period beginning on June 21, 2008, and ending on June 21, 2009. On July 22, 2008, AIG Casualty issued a notice of cancellation of the plaintiff's personal automobile policy due to non-payment of a premium. The cancellation was to take effect on August 2, 2008. At the time the notice was mailed, both plaintiffs were out of the state and away from their home.

The plaintiffs returned home on July 28, 2008. On August 3, 2008, Thomas Lee was involved in a motor vehicle accident that resulted in claims against him for bodily injury and property damage. Upon contacting the defendant on the morning of August 4, 2008, the plaintiff Thomas Lee was informed that the plaintiffs' automobile insurance had been cancelled. Upon inquiring as to the outstanding balance of payments, the defendant's agent informed Mr. Lee that a past-unpaid premium originally due June 28, 2008, totaled $1,735.20.  Mr. Lee authorized payment from his checking account of the past-unpaid premium and the contemporaneous payment due on his payment plan on August 28th, 2008, totaling $2,602.80.  Later that same day Mr. Lee discovered the notice of cancellation of the automobile insurance policy in a pile of mail within his home, as well as a billing statement indicating a past-unpaid premium of $1,735.20 and a current premium of $867.60, totaling $2,602.80.  Further into the evening on August 4, 2008, another agent of AIG contacted Mr. Lee and informed him that the defendant

would not be providing coverage for any claim arising from the accident on August 3, 2008, due to the cancellation of the plaintiffs' automobile insurance.

On August 5, 2008, Gloria Lee contacted the defendant separately and inquired about the outstanding balance. With the billing statement in front of her, Ms. Lee authorized payment of the full $2,602.80 on a credit card. On August 12, 2008, the plaintiffs received a letter from the defendant informing them that the cancellation of the insurance policy was still in effect and that no coverage would be provided for the August 3, 2008 accident. On August 28, 2008, the plaintiffs received a check from the defendant in the amount of $2,103.80. The defendant has characterized the $2,103.80 check as a return of "[u]nearned premium." (Doc. # 60-3, at 69, ¶12).

The plaintiffs filed a complaint dated November 11, 2008, in the Superior Court of the State of Connecticut. On December 12, 2008, the defendants removed the case to the United States District Court for the District of Connecticut on the basis of diversity of citizenship. On December 18, 2009, the plaintiffs filed an Amended Complaint. The first count of the Amended Complaint alleges that the defendant failed to conform to the requirements of Conn. Gen. Stat. §38a-343(a) and therefore the notice of cancellation of their automobile insurance was invalid. The second count alleges that the defendant acted in reckless disregard for the plaintiffs' rights and that the defendant acted to reinstate the insurance following the cancellation. It further alleges a breach of that reinstatement. The third count alleges a violation of the covenant of good faith and fair dealing. The fourth count alleges violations of CUIPA and CUTPA.

Both the defendant and the plaintiffs have moved for summary judgment on all counts. In a sur-reply to the plaintiffs' motion for summary judgment, the defendant

recognized that the plaintiffs are now involved in a civil action resulting from the aforementioned accident. *See Abreu v. Lee*, Docket No. FST-CV-10-6006279S (Conn. Super. Ct. July 28, 2010) (ongoing).  The defendant has asserted in its sur-reply that, subject to the outcome of the instant case in the defendant's favor, the plaintiff Thomas Lee faces a "gap in coverage, in the  amount of $300,000" relating to the ongoing state court litigation. (Doc. # 106, at 2-3).

## II. DISCUSSION

A. STANDARD OF REVIEW

It is well settled that the burden is upon the party moving for summary judgment to establish that there are no genuine issues of material fact in dispute and that the party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Pouliot v. Paul Arpin Van Lines, Inc.,* 367 F. Supp. 2d 267, 270 (D. Conn., 2005). Once the moving party has done so, the nonmoving party must then "set forth specific facts showing that there is a genuine issue for trial," *Anderson*, 477 U.S. at 256, and present such evidence as would allow a jury to reasonably find in the nonmoving party's favor. *Graham v. Long Island R.R.*, 230  F.3d 34, 38 (2d Cir. 2000); *Exantus v. Metropolitan Property & Casualty Ins. Co.,* 582 F. Supp. 2d 239, 245 (D. Conn. 2008).

"In assessing the record, the trial court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought." *Pouliot*, 367 F. Supp. 2d at 270. "This remedy that precludes a trial is properly granted only when no rational finder of fact could find in favor of the non-moving party." *Carlton v. Mystic Transportation, Inc.,* 202 F.3d 129, 134 (2d Cir. 2000). "When reasonable persons, applying the proper legal standards, could differ in their responses to the question," the

question must be left to the jury. *Sologub v. City of New York*, 202 F.3d 175, 178 (2d Cir. 2000).

Neither side in this case alleges that there are disputed material facts. Both sides in their Rule 56(a)(1) and (2) statements have argued that there are no material issues of fact in dispute, and that those few facts in dispute are immaterial. Both, however, disagree strongly on the legal conclusions drawn from the evidence provided in the respective parties' Rule 56(a)1 statements. With this in mind, the issue before the Court is more strictly a question of which party, under the agreed-upon material facts, may be entitled to judgment as a matter of law.

B. CANCELLATION OF THE INSURANCE POLICY

1. Notice of Cancellation of the Insurance Policy

The main issue disputed by both sides is whether the Lee's automobile insurance policy was properly cancelled and notice of cancellation properly provided. The defendant claims that it has followed the guidelines of Conn. Gen. Stat. §38a-343(a), whereas the plaintiffs claim that the defendant's cancellation notice was defective under the same statute.

Both plaintiffs and defendant advance an argument based upon interpretations of Conn. Gen. Stat. §38a-343(a). That statute provides that "[n]o notice of cancellation of a policy . . .  shall be effective unless sent, by registered or certified mail or by mail evidenced by a certificate of mailing, or delivered by the insurer to the named insured . . . at least forty-five days before the effective date of cancellation, except that . . .  where cancellation is for nonpayment of any . . .  premium [other than the first premium on a new policy], at least ten days' notice of cancellation accompanied by the reason for

cancellation shall be given." The statute breaks the requirements for proper cancellation into two distinct parts. "For cancellation of a renewal policy, the statute requires that the notice of cancellation must be (1) timely and (2) properly mailed or delivered." *AIG Casualty Co. v. Schweiger*, No. HHDCV084035100S, 2009 WL 3416139, at *4 (Conn. Super. Sept., 17, 2009). This Court addresses the second of these requirements first.

"The plain language of §38a-343(a) clearly and unambiguously indicates that sending a notice of cancellation by mail evidenced by a certificate of mailing satisfies the obligation imposed by the statute." *Echavarria v. National Grange Mutual Ins. Co.*, 275 Conn. 408, 414 (2005). In the instant case, it is undisputed that the defendant sent notice by mail and produced evidence of such by a certificate of mailing. The issue addressed by both sides is whether the certificate of mailing was defective, and therefore invalid, under the requirements of the statute.

The plaintiffs claim that the certificate of mailing produced by the defendant was improper according to the U.S. Postal Service's Domestic Mail Manual. They further argue that strict compliance with §38a-343(a) necessitates that each certificate reveal no flaws in any shape or form. The defendant responds by claiming that such strict compliance elevates "form over substance" and cites a number of cases from other jurisdictions in which strict compliance in producing proper certificates of mailing was unnecessary.[1] It is well established, however, that under Connecticut law insurers must

---

[1] The defendant further argues that Conn. Gen. Stat. §38a-343(a) was permissive rather than mandatory at the time of the plaintiff's cancellation. They base this argument upon the use of the phrase "no notice of cancellation of a policy… *may* be effective" (emphasis added) in substitution of the word "shall" found following the 2009 statutory revisions. However, this argument is unavailing. While it is true that Connecticut courts "have consistently held that 'may' is directory rather than mandatory," *Commission on Human Rights & Opportunities v. Truelove & Maclean, Inc.* 238 Conn. 337, 349 (1996), this is only the case when "stated in affirmative terms unaccompanied by negative words." *Weems v. Citigroup, Inc.* 289 Conn. 769, 790 (2008) (internal quotation marks omitted). Conn. Gen. Stat. §38a-343(a) should be

comply strictly with policy provisions and statutory mandates concerning written notice of cancellation. *Majernicek v. Hartford Casualty Insurance Co.*, 240 Conn. 86, 95 (1997); *see also Stratton v. Abington Mutual Fire Ins. Co.*, 9 Conn. App. 557, 561 (1987).

*Echavarria* provides illuminating insight into the methodology of measuring a certificate of mailing's validity. In that case, the court "acknowledge[d] that the United States Postal Service is the authority that defines and determines what constitutes a certificate of mailing." *Echavarria*, 275 Conn. at 416 n.8. It therefore decided to "take judicial notice of the Domestic Mail Manual," *id.*, as a means of determining the "characterization of the defendant's mailing process." *Id.* at 416.  The defendant admits to errors in the certificate of mailing in the present case but argues that the errors do not invalidate the certificate's validity. The defendant has encouraged the court to adopt a lenient view of compliance with Conn. Gen. Stat. §38a-343(a) that falls in line with some courts from other jurisdictions. *See Blood v. Kenneth A. Murray Ins., Inc.*, 151 P.3d 428 (Alaska 2006) (holding that proof of mailing by other means excuses the errors in a certificate of mailing); *Loiselle v. Barsalow*, 180 Vt. 531 (2006) (holding that a certificate of mailing was valid despite lacking a postmark or signature).

The simple response to the defendant's argument, and one that the plaintiffs rightly point out, is that the jurisdictions the defendant cites to lack the strict compliance requirements of Connecticut. In *Blood,* the Alaska Supreme Court made no note of strict compliance, and further rejected any separate duty of care and diligence on the part of the insurance company.  *Blood,* 151 P.3d at 434. In another case cited by the defendant,

---

interpreted, even before the revisions of 2009, as having mandatory requirements. *See Echavarria v. National Grange Mutual Ins. Co.*, 275 Conn. 408 (2005).

*Public Service Electric & Gas v. Uphold*, 316 N.J.Super. 168 (App. Div. 1998), the court indicated that it would have held that the certificate in question did not comply with the pertinent statute "[i]f that were the determinative issue" on appeal. *Id.* at 170.  *Loiselle* dealt mostly with the issue of "facsimile" versions of USPS Form 3877, which is not at issue in the instant case. *See Loiselle*, 180 Vt. at 533. None of the cases cited by the defendant is compelling as to why this Court should ignore the standard of strict compliance by insurers with statutory mandates in Connecticut.[2]

The Domestic Mail Manual is the authoritative document published by the administrative agency in charge of mailing service. The manual must be given deference pursuant to the doctrine articulated in *Chevron U.S.A. Inc.  v. National Resources Defense Council*, *Inc.,* 467 U.S. 837 (1984). The *Chevron* doctrine notes that the Supreme Court has "long recognized that considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer . . . ." *Chevron*, 467 U.S. at 844. "The power of an administrative agency to administer a congressionally created . . .  program necessarily requires the formulation of policy and the making of rules to fill any gap left, implicitly or explicitly, by Congress." *Id*. at 843 (internal quotation marks omitted).

"When a challenge to an agency construction of a statutory provision, fairly conceptualized, really centers on the wisdom of the agency's policy, rather than whether it is a reasonable choice within a gap left open by Congress, the challenge must fail." *Id*. at 866. The language in *Echavarria* explicitly states that the court "acknowledge[s] that

---

[2] The defendant furthermore argued that the statutes in Alaska, New Jersey, and Vermont were substantially similar to Conn. Gen. Stat. §38a-343(a). However the differences in word choices, timing, and methodology make the statutes similar, but not close enough to ensure equitable interpretations at law. *See* AS §21.36.220; N.J.S. §17:29C-10; 8 V.S.A. §4226.

the United States Postal Service is the authority that *defines* and *determines* what constitutes a certificate of mailing." *Echavarria*, 275 Conn. at 416 n.8 (emphasis added). The argument that strict compliance with the manual elevates "form over substance" is one that challenges the quality of the policy decision to utilize the Domestic Mail Manual, not its applicability under Conn. Gen. Stat. §38a-343(a). Pursuant to the *Chevron* Doctrine and *Echavarria*'s recognition of the United States Postal Service's authority, the Court concludes that certificates of mailing must comply with the Domestic Mail Manual to be considered valid for the purposes of Conn. Gen. Stat. §38a-343(a).

Section 5.1.1 of the Domestic Mail Manual provides in part that "[i]n addition to the correct postage, the applicable certificate of mailing fee must be paid for each article on . . .  Form 3877. The correct fee, based on the quantity mailed, must be paid in addition to postage for mailings of identical pieces of First-Class Mail . . . ." (Doc. # 97-7, at 24). Both sides agree that the defendant did not pay the appropriate mailing fee for the Form 3877 it utilized in connection with notice to the plaintiffs. Section 5.2.3 provides that the use of a Form 3877 is "subject to payment of the applicable fee for each item listed." (*Id.*). Based on the express language contained in the Domestic Mail Manual, the Court concludes that failure to pay proper postage and fees as required by the Domestic Mail Manual invalidates a certificate of mailing for the purposes of Conn. Gen. Stat. §38a-343(a). The Court further concludes, however, that the circumstances of the instant case do not give rise to the invalidation of notice on the basis of the defendant's non-compliance with the Domestic Mail Manual.

Despite the errors in the certificate of mailing, the plaintiffs have acknowledged that they received the notice informing them of the cancellation. The defendant argues

that this admission by the plaintiffs constitutes actual notice. *See Johnston v. American Employers Ins. Co.*, 25 Conn. App. 95, 97–98 (1991) (actual notice satisfied the notice requirements of Conn. Gen. Stat. §38a-343(a)). The determination of whether or not a defendant has provided actual notice is often controlled by the "mailbox rule," which provides that "a properly stamped and addressed letter that is placed into a mailbox or handed over to the United States Postal Service raises a rebuttable presumption that it will be received." *Echavarria*, 275 Conn at 418; *see also Schweiger*, 2009 WL 3416139 at *6. Since the plaintiffs have acknowledged receiving the notice, however, this test becomes unnecessary. The plaintiffs had actual notice of the cancelled auto insurance, and in Connecticut actual notice constitutes notice that comports with the requirements of Conn. Gen Stat. §38a-343. *See Johnston,* 25 Conn. App. at 97-98.

2. Timeliness of Notice

Having established actual notice, the question then becomes whether the notice was timely. For the reasons stated below, the Court concludes that the defendant did not give notice in a timely fashion.

The plaintiffs have advanced an argument that rarely has been addressed in Connecticut's jurisprudence. This argument is based on a language difference in Conn. Gen. Stat. § 38a-343(a) between the general provision concerning cancellation notices (notice must be "sent . . . at least forty-five days before the effective date of cancellation") and the specific provision regarding notices of cancellation for nonpayment of premiums ("at least ten days' notice of cancellation . . . must be given"). The plaintiffs contend that the use of the word "given" regarding notices of cancellation for nonpayment of premiums indicates that a notice of cancellation for nonpayment must

be actually received at least ten days prior to the cancellation date. The argument follows that based on the date the defendant mailed the cancellation notice in this case, the plaintiffs would not have been able to receive at least ten days' actual notice even under optimal delivery times, and thus the notice delivered by the defendant was not timely. In support of their timeliness argument, the plaintiffs quote extensively from *Schneider v. Brown*, No. CV980340692S, 2003 WL 22290993 (Conn. Super. Sept. 19, 2003), which stands as one of the few cases addressing this statutory language difference at length.

The defendant responds first by claiming that the holding in *Schneider* is not applicable to the circumstances of this case. It then argues in the alternative that *Schneider* cannot be read to demand ten days' actual notice and that in either case the plaintiffs in fact did receive their letter, and therefore actual notice, negating the question of whether it was delivered in a timely fashion.

At the time *Schneider* was decided, the Connecticut Supreme Court had abandoned the "plain meaning rule" of statutory interpretation and instead adopted the "*Bender* formulation." *State v. Courchesne,* 262 Conn. 537, 563 (2003) (citing *Bender v. Bender*, 258 Conn. 733 (2001)). In *Courchesne*, the Court noted that under the *Bender* formulation, it must engage in "a reasoned search for the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply." *Id*. at 563 (internal quotation marks omitted). However, *Courchesne* was subsequently superseded by the Connecticut legislature, which adopted the current "plain meaning rule" in Conn. Gen. Stat. §1-2z.[3]

---

[3] "The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." Conn. Gen. Stat. §1-2z.

Even under the "plain meaning rule" articulated in Conn. Gen. Stat. §1-2z, the *Schneider* opinion is still valuable. "[A] conclusion that statutory language is ambiguous ordinarily allows a court, pursuant to §1-2z, to consult extratextual sources in interpreting a statute . . . ." *Envirotest Systems Corp. v. Commissioner of Motor Vehicles*, 293 Conn. 382, 390 (2009). "It is well settled that 'there is a presumption of purpose behind every sentence, clause, or phrase in a legislative enactment so that in construing meaning no part is treated as insignificant and unnecessary'" *Schneider*, 2003 WL 22290993, at *6 (quoting *Zichichi v. Middlesex Memorial Hospital,* 204 Conn. 399, 407 (1987)); *see also Peck v. Jacquemin*, 196 Conn. 53, 66 (1985).  The exact meaning of the word "given" in Conn. Gen. Stat. §38a-343(a) is not clear. In light of the numerous interpretations that can be ascribed to the word "given," it is impossible to be certain that the word's meaning in context is exactly analogous to the word "sent". The ambiguity of the word warrants a search outside of the plain text, and leads the Court to consider *Schneider*'s reasoning.

There is a recognized dearth of appellate guidance on this matter in the Connecticut courts. The only applicable statement from the appellate level is a single line in *Travelers Ins. Co. v. Hendrickson*, 1 Conn. App. 409 (1984).  After quoting the language of the statute, the court in *Travelers* noted in *dicta* that, "Thus, it is clear that notice of cancellation for nonpayment of premium must be sent at least ten days before the effective date of cancellation." *Id*. at 412. Yet the question of actual notice was not before the court and there was no discussion in *Travelers* of the language difference in Conn. Gen. Stat. § 38a-343(a) between the word "sent" in one clause and the word "given" in another. It is entirely possible that the court never perceived or even considered a difference between the two, or that it may have been an unintentional usage.

*See Schneider*, 2003 WL 22290993, at *5 (the meaning and interpretation of the words "sent" and "given" in *Travelers* "was not even before the Court and [the Court's use of the word "sent" in the sentence quoted above] may have been an unintentional use of the word "sent").

It appears that *Schneider* is one of only three courts to discuss the difference between the two clauses in Conn. Gen. Stat. §38a-343(a) at any length. Two other decisions reflect a necessity for actual notice to be provided as part of the second clause of Conn. Gen. Stat. §38a-343(a). *See Hernanadez  v. Hartford Accident & Indemnity Co*., 1 Conn. L. Rptr. 317 (Conn. Super. Feb. 24, 1990) (holding that actual receipt of a notice of cancellation for nonpayment of premium was required to fulfill the requirements of Conn. Gen. Stat. §35-175h(a));[4] *Atwood v. Progressive Insurance Co.,*No. CV 950051089S, 1997 WL 583638 (Conn. Super. Sept. 3, 1997) (requiring actual notice as part of the 10-day requirement for nonpayment of insurance in Conn. Gen. Stat. §38a-343(a)). The question then is whether this Court should adopt the standard articulated in these prior decisions. The Court finds that an application of the reasoning in *Schneider* is appropriate.

The Court recognizes that the "'use of different words [or the absence of repeatedly used words in the context of] the same [subject matter] must indicate a difference in legislative intention.'" *Schneider,* 2003 WL 22290993, at *7(quoting *Plourde v. Liburdi,* 207 Conn. 412, 416 (1988); *see also Fritz v. Madow*, 179 Conn. 269, 272 (1979) (noting that the use of the different words "shall" and "may" in the same

---

[4] Conn. Gen. Stat. §35-175h was transferred to Conn. Gen. Stat. §38a-343 in 1991.

statute lends support to distinguishing those words according to their ordinary meanings).[5]

Furthermore, it is clear that the legislature intended this statute to be effective as a means of allowing individuals to seek alternative insurance when their current coverage was to be cancelled. The opinion in *Schneider* articulates the issue here perfectly:

> For a cancellation for nonpayment of premium the notice requirement is only 10 days, and the statute requires that the reason for cancellation be expressly provided. There would be little reason to require that the reason be stated for this form of cancellation and then hold that actual receipt of the cancellation notice was not required. Also the shortened time period of 10 days would offer someone who was on a two week vacation away from home when the notice was delivered no protection from becoming personally liable for damages arising from an accident . . . with no knowledge that his insurance had been cancelled for nonpayment.

2003 WL 22290993, at *8. This Court therefore joins the decisions in *Schneider* and *Atwood* and holds that the use of "given" in the second clause of Conn. Gen. Stat. §38a-343(a) necessitates actual notice of cancellation due to nonpayment of a premium. In this case, of course, actual notice was in fact provided. However, upon reading Conn. Gen. Stat. §38a-343(a) with the requirement of actual notice in mind, it is clear to the Court that the notice was not timely.

Upon reapplying the "plain meaning rule" of Conn Gen. Stat. §1-2z to the statute, Conn. Gen. Stat. § 38a-343(a) states, "where cancellation is for nonpayment of any . . . premium [other than the first premium on a new policy], at least ten days' notice of

---

[5] The Court notes that some other states have treated the same issue in a similar fashion. *See Edens v. South Carolina Farm Bureau Mutual Ins. Co.,* 308 S.E. 2d 670, 671 (S.C. 1983) (distinguishing between "mailing written notice" and "giving written notice" for purposes of canceling an insurance policy); *Rocque v. Co-operative Fire Ins. Assn. of Vermont*, 438 A.2d 383, 386 (Vt. 1981) (noting that "giving notice" demands additional action beyond "mailing notice"). However, it is the reasoning in *Schneider* and *Atwood* that remains most persuasive given the distinct wording of Conn. Gen. Stat. §38a-343(a).

cancellation accompanied by the reason for cancellation shall be given." The statute therefore requires that the actual notice provided be given at least ten days in advance of the cancellation date. *See Atwood*, 1997 WL 583638, at *5 (noting that what defines "untimely" hinges on "whether mailing is the point from which the ten day notice requirement is measured or whether receipt is the determining date"). In this case the Court concludes that the defendant did not mail the notice with enough time for the cancellation to arrive ten days in advance of the cancellation date.

When considering statutes requiring that "so many days 'at least' are given to do an act . . . both the terminal days are excluded." *Treat v. Town Plan & Zoning Commission*, 145 Conn. 136, 139 (1958). It is undisputed that the letter containing notice of cancellation sent by the defendant was mailed on July 22, 2008. The earliest the letter could have arrived would have been July 23, 2008. Excluding both terminal days (July 23, 2008, and August 2, 2003), only nine days' notice of cancellation could have been given to the plaintiffs. Furthermore, there is no evidence that this letter would have been delivered the next day. The defendant did not pay for overnight delivery, nor was any evidence presented indicating that it would have been delivered overnight. The defendant's expert conceded that there was no more than a 15% chance of the letter reaching the area for delivery by July 23, 2008, and that it was far more likely to have been received on July 24, 2008.

Regardless, there was no point in time in which the defendant's letter could have been delivered so that the notice would have reached the plaintiffs in a timely manner in compliance with Conn. Gen. Stat. §38a-343(a). The defendant's expert acknowledged that in this case there was no chance that the letter would have been received on July 22,

2008. (Doc. # 71, at 55, lines 18-24).  For that reason, the Court concludes that the notice of cancellation provided to the plaintiffs was untimely and therefore invalid under Conn. Gen. Stat. §38a-343(a). Because the notice of cancellation was invalid, the policy itself was not properly cancelled and must be enforced.

3. Reinstatement of the Policy

The plaintiffs allege and discuss at length a claim that the defendant reinstated their policy following the notice of cancellation and that the defendant is in breach of this reinstated policy. However, before the Court addresses this claim it must first look to see if the plaintiffs currently present a justiciable case or controversy as to this claim.

"In order to satisfy the case-or-controversy requirement [of Article III of the United States Constitution], a party must, at all stages of the litigation, have an actual injury which is likely to be redressed by a favorable judicial decision." *United States v. Blackburn*, 461 F.3d 259, 261 (2d Cir. 2006) (internal quotation marks omitted). "*Certain issues* that would otherwise [be] in dispute [can become] moot, in the sense that the court no longer need[s] to resolve them." *ABN AMRO Verzekeringen BV v. Geologistics Americas, Inc.*, 485 F.3d 85, 95 (2d Cir. 2007).  As a result of the Court's ruling that the policy issued by the defendant to the plaintiffs remained in effect and must be enforced, "all litigable *issues* pertaining to [the question of whether the plaintiffs were covered under an automobile insurance policy issued by the defendant] ceased to have practical importance . . . ." *Id.*

Though the plaintiffs have alleged a misrepresentation on the part of an employee of the defendant when they sought to reinstate the policy, the alleged misrepresentation is rendered moot by this Court's holding as to the sufficiency of the cancellation notice. In

essence, the plaintiffs cannot claim a breach of a reinstatement for a policy that was never adequately cancelled.  Additionally, the plaintiffs cannot demonstrate an injury caused by the alleged conduct. All of the payments taken by the defendant following cancellation were either applied to the unpaid premium or were returned to the plaintiffs.[6] For these reasons, the plaintiffs' claim of a breach of the terms of the policy relating to the reinstatement of the policy is denied.

C. RECKLESSNESS CLAIM

As part of their Amended Complaint, the plaintiffs have asserted that the defendant acted in reckless disregard of others and is therefore subject to punitive damages. The plaintiffs claim such damages both from the improper notice of cancellation and the alleged reinstatement of the policy following the cancellation. As the court has dismissed the second count as moot, this section shall only address recklessness as it relates to the improper notice of cancellation claim.

In Connecticut, "[i]n order to award punitive or exemplary damages, evidence must reveal a reckless indifference to the rights of others or an intentional and wanton violation of those rights. In fact, the flavor of the basic requirement to justify an award of punitive damages is described in terms of wanton and malicious injury, evil motive and violence." *Venturi v. Savitt, Inc.*, 191 Conn. 588, 592 (1983) (citation omitted).  Although "[p]unitive damages are not ordinarily recoverable for breach of contract[,] . . . [b]reach of contract founded on tortious conduct may allow the award of punitive damages." *L.F.*

---

[6] The plaintiffs have spent a great deal of time and effort to raise questions about a sum of money totaling $86.00 that, instead of being returned to the plaintiffs, was apparently applied to an umbrella policy that the plaintiffs also held with the defendant. While there are some questions that could be raised as to the propriety of the defendant's action, the plaintiffs did not raise a claim based upon this payment, nor have they alleged a breach of the umbrella policy. Therefore, the Court sees no reason to address the payment's validity.

*Pace & Sons, Inc. v. Travelers Indemnity Co.,* 9 Conn. App. 30, 48 (1986) (internal

quotation marks and citation omitted).  However, "[s]uch tortious conduct must be

alleged in terms of wanton and malicious injury, evil motive and violence, for punitive

damages may be awarded only for outrageous conduct, that is, for acts done with a bad

motive or with a reckless indifference to the interests of others." *Id.* (internal quotation

marks omitted).

The plaintiffs here charge recklessness on the part of the defendant's agent.

"Recklessness is a state of consciousness with reference to the consequences of one's

acts. It is more than negligence, more than gross negligence." *Dubay v. Irish*, 207 Conn.

518, 532 (1988) (internal quotation marks and citation omitted). "Under Connecticut law,

recklessness may be inferred from a party's conduct." *Pouliot v. Paul Arpin Van Lines,

Inc.*, 367 F. Supp. 2d 267, 275 (D. Conn.2005). "Summary Judgment may . . . be

appropriate [as to whether conduct is reckless] where the relevant facts are undisputed

and 'when the mind of a fair and reasonable man could reach but one conclusion' on the

basis of those facts." *Id*. (quoting *Dubay*, 207 Conn. at 535 n.10).

In the instant case, the plaintiffs have failed to put forth facts that rise to the level

of recklessness on the part of the defendant. The plaintiffs' main argument is that the

individual responsible for the oversight of the mail department failed to ensure that

notices of cancellation were sent out in a timely fashion and that proper certificates of

mailing were produced. The plaintiffs have enumerated components of proper insurance

cancellation procedure that were within the scope of the defendant agent's knowledge.

They then allege that a lack of action on the part of the defendant's agent gave rise to the

invalid cancellation and that such lack of action was reckless. The Court does not agree

that the facts brought forward by the plaintiffs concerning the agent's conduct could reasonably support a conclusion of recklessness.

Recklessness "requires a conscious choice of a course of action either with knowledge of the serious danger to others involved in it or with knowledge of facts which would disclose this danger to any reasonable man . . . ." *Mooney v. Wabrek,* 129 Conn. 302, 308 (1942) (internal quotation marks omitted). The defendant's agent was a supervisor responsible for running an entire department of individuals. The plaintiffs have demonstrated that the agent knew the proper methodology of cancellation, but there is no evidence that the agent was aware of possible errors in the defendant's certificates of mailing.  A vital component of the recklessness standard is an "*action* entailing an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Safeco Ins. Co. of America v. Burr,* 551 U.S. 47, 68–69 (2007) (emphasis added) (internal quotation marks omitted).  A sufficient knowledge of facts and then a conscious decision to disregard those facts satisfies the "action" component. To allege that somehow the defendant's agent should have known the facts, i.e., errors in the defendant's certificates of mailing, is to allege negligence on the part of the agent, not recklessness. A lack of knowledge of a problem does not rise to a "conscious choice" to disregard information, and does not satisfy the action component of recklessness.

The plaintiffs argue that as a supervisor, the defendant's agent was obligated to have knowledge of the errors and that his lack of knowledge must have come from a conscious choice to not seek out the information — essentially articulating an argument of "reckless supervision." To support this argument they rely on the case of *State v. Maurice M.,* 116 Conn. App. 1 (2009), which recognized a single scenario of reckless

supervision. The Court finds the plaintiffs' reliance upon this case to be unavailing for three reasons. First, *Maurice M.* discussed the relationship between a father and his two year old son who was under his care, *id.* at 16-17, which is fundamentally different from the relationship between a supervisor and the employees he supervises. Second, *Maurice M.* dealt with recklessness specifically in the context of a conclusion by the trial court that the defendant had violated his probation by committing the crime of risk of injury to a minor, not in the context of alleged tortious conduct. *See State v. Maurice M.*, 303 Conn. 18, 20 (2011). Finally, *Maurice M.* was reversed on appeal to the Connecticut Supreme Court. The Supreme Court rejected the idea that negligent supervision in and of itself rose to the level of "reckless disregard" for purposes of demonstrating risk of injury to a minor. *Id.* at 40 ("we decline to conclude that the defendant's failure to supervise the child inside the home, by itself, represents a reckless disregard of the consequences, sufficient to substantiate a conviction under [the risk of injury to a minor criminal statute]"). The Connecticut Supreme Court's opinion calls into question the concept of "reckless supervision" in and of itself, and neither the Appellate nor Supreme Court expressed a willingness to extend the concept to a civil context.

The Court concludes that the plaintiffs have only provided facts that could – theoretically – give rise to negligence on the part of the defendant's agent. While it was possibly negligent of him to not ensure that certificates of mailing complied with the Domestic Mail Manual, the errors on the certificates of mailing are not what resulted in improper notice in this case. Rather, it was a failure to deliver the notice in a timely fashion that invalidated the notice.

The Court is not persuaded by the plaintiffs' claim that because the defendant was made aware of pertinent case law before the deposition of an AIG Assistant Vice President was taken in the instant matter in 2009, it is somehow liable under the theory of recklessness for failing to adhere to the plaintiffs' interpretation of that case law and then immediately performing on the insurance contract.  The Court had not yet determined the respective responsibilities and liabilities of the parties at the time of the deposition. To contest a legal argument in the courts is not a reckless act, even when the law may eventually be construed unfavorably to the contesting party. For these reasons, the plaintiffs' claim that the defendant acted in reckless disregard of others is denied.

D. GOOD FAITH AND FAIR DEALING VIOLATION[7]

The plaintiffs further claim that the defendant breached a covenant of good faith and fair dealing associated with their insurance policy. "It is well established that Connecticut recognizes a common law action for breach of the implied covenant of good faith and fair dealing implicit in every contract."  *L.A. Limousine, Inc. v. Liberty Mutual Ins. Co.,* 509 F. Supp. 2d 176, 180 (D. Conn., 2007) (citing  *Buckman v. People Express, Inc.*, 205 Conn. 166, 170–71 (1987)). "This duty requires both parties to a contract to conduct themselves in a manner that will not injure the right of the other party to receive the benefits of the agreement." *Exantus v. Metropolitan Property & Casualty Ins. Co.,* 582 F. Supp. 2d 239, 247 (D. Conn. 2008); *see also Home Ins. Co. v. Aetna Life & Casualty Co.*, 235 Conn. 185, 200 (1995). "To constitute a breach of that covenant, the acts by which a defendant allegedly impedes the plaintiff's right to receive benefits that

---

[7] For purposes of ruling on the summary judgment motions, the Court assumes, without specifically finding, that the Third Count of the Amended Complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

he or she reasonably expected to receive under the contract must have been taken in bad faith." *Exantus*, 582 F. Supp. 2d at 247 (internal quotation marks omitted).

"Bad faith in general implies both actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation . . . . ." *Id*. (internal quotation marks omitted). It must not be "prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive. Bad faith means more than mere negligence; it involves a dishonest purpose." *Id*. (internal quotation marks omitted); *see also Gore v. Colonial Penn Ins. Co.,* 335 F. Supp. 2d  296, 304 (D. Conn. 2004) ("'Bad faith . . . involves a dishonest purpose.'" (quoting *Habetz v. Condon*, 224 Conn. 231, 237 (1992)). To prevail on a claim of bad faith, "the plaintiff must show evidence that the insurer acted unreasonably or contrary to the policy provisions." *Exantus*, 582 F. Supp. 2d at 247 (internal quotation marks omitted).

The plaintiffs allege violations of good faith and fair dealing on the basis that the defendant acted recklessly. In support of that claim, the plaintiffs rely heavily on *Uberti v. Lincoln National Life Ins. Co.,* 144 F. Supp. 2d 90 (D. Conn. 2001). However, the facts in *Uberti* are significantly different from the facts before this Court. In *Uberti*, the defendant insurer denied the plaintiff's claim for disability benefits beyond a period of sixty months on the basis that his disability resulted from "sickness" rather than "accidental bodily injuries." *Id.* at 97.   In finding that the defendant insurer had breached the implied covenant of good faith and fair dealing, the court concluded that the defendant insurer's "determination that plaintiff's disability was the result of 'sickness' was an arbitrary medical determination made by an unqualified claims examiner whose

opinion was unsupported by the medical record, and directly contradicted by the opinions of [the plaintiff's] treating physician in the pertinent specialty." *Id.* at 105. The court went on to find that "[t]his arbitrary conduct was more than negligence or honest mistake, given that both [the claims examiner's] supervisor and the one medical expert she consulted recommended further investigation [which was not conducted] . . . ." *Id.* at 105-06.

As already addressed, the plaintiffs in this case have not provided sufficient evidence that the defendant acted in a reckless manner, nor have they demonstrated how continuing to litigate this case while aware of the current statutory requirements gives rise to a charge of bad faith. The defendant did not violate the covenant of good faith and fair dealing, despite the error in the timeliness of the required notice under Conn. Gen. Stat. §38a-343(a).

E. CUTPA/CUIPA VIOLATIONS[8]

The Plaintiffs also assert violations of the Connecticut Unfair Trade Practices Act (CUTPA). They allege CUTPA violations both in terms of the defendant violating the Connecticut Unfair Insurance Practices Act (CUIPA) and independent CUTPA violations. The defendant contends that it has not violated either CUIPA or CUTPA. With respect to these claims, the Court agrees with the defendant.

1. CUIPA Violations through CUTPA

"Although there is debate as to whether a private cause of [action] exists under CUIPA, there is no doubt that violations of CUIPA may be alleged as a basis for a

---

[8]For purposes of ruling on the summary judgment motions, the Court assumes, without specifically finding, that the Fourth Count of the Amended Complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

CUTPA claim." *Western World Insurance Co. v. Architectural Builders of Westport, LLC.* 520 F. Supp. 2d 408, 411 (D. Conn. 2007); *see also Lees v. Middlesex Ins. Co.*, 229 Conn. 842, 850 (1994) ("a CUTPA claim based on the public policy embodied in CUIPA must be consistent with the regulatory principles established therein"). "In order to sustain a CUIPA cause of action under CUTPA, a plaintiff must allege conduct that is proscribed by CUIPA." *Nazami v. Patrons Mutual Ins. Co.,* 280 Conn. 619, 625 (2006).

The plaintiffs have raised a claim under a specific provision of CUIPA. They argue that the defendant was responsible for "[m]aking, issuing, or circulating . . . a[] . . . statement . . . which: (a) Misrepresents the benefits, advantages, conditions, or terms of any insurance policy . . . ." Conn. Gen. Stat. §38a-816(1)(a). Specifically they allege that the defendant's notice of the cancellation of the plaintiffs' insurance policy is a misrepresentation for the purposes of Conn. Gen. Stat. §38a-816(1)(a).

"Traditionally, an action for negligent misrepresentation requires the plaintiff to establish (1) that the defendant made a misrepresentation of fact (2) that the defendant knew or should have known was false, and (3) that the plaintiff reasonably relied on the misrepresentation, and (4) suffered pecuniary harm as a result." *Nazami*, 280 Conn. at 626; *see also Western World Ins. Co.*, 520 F. Supp. 2d at 412. The Court finds that the plaintiffs have not established either of the first two prongs of negligent misrepresentation. The plaintiffs argue that because they believe their coverage did not and should not have ceased on August 2, 2008, the notice sent by the defendant indicating that it would cease was necessarily false. The Court does not agree with the plaintiffs' argument. The Court has not held that the cancellation of the plaintiffs' policy was invalid as a misrepresentation of fact by the defendant; what the Court held is that

24

the notice of cancellation was not false but was also not timely. The error was not in the decision of the defendant to cancel the plaintiffs' insurance; the error was in the defendant's procedure to accomplish the cancellation. What occurred in the instant case was an otherwise valid cancellation whose notice was untimely. With that understood it is clear that there was no false assertion of fact.

Furthermore, even if it were assumed for the sake of argument that the notice constituted a misrepresentation of fact, the plaintiffs have not established that the defendant knew, or should have known, that it had made a false representation of fact. The notice was contested in this Court and disputed by the plaintiffs. However, there is nothing before the Court indicating that the defendant did not believe its representation was both true and accurate at the time it was made. The contestation of the cancellation notice occurred after the notice's delivery. No evidence provided by the plaintiff demonstrates the defendant being aware of a misrepresentation in the notice. For these reasons, the plaintiffs' claim of a violation of CUIPA through CUTPA is denied.

 2. Independent CUTPA Claims

The plaintiffs have also alleged six different independent violations of CUTPA. There is disagreement as to whether CUIPA and CUTPA can be separated so that a claim of an independent CUTPA violation may be maintained against an insurance company. *Compare Royal Indemnity Co. v. King*, 532 F. Supp. 2d 404, 410 (D. Conn. 2008) (internal quotation marks omitted) ("A plaintiff may not bring a cause of action under CUTPA based on conduct which does not also violate CUIPA where the alleged misconduct is related to the insurance industry."), *with L.A. Limousine, Inc.*, 509 F. Supp. 2d at 183 ("In order for an independent CUTPA claim to survive dismissal of a CUIPA

through CUTPA claim based on the same underlying conduct, a plaintiff must elaborate on that conduct to show an independent violation of CUTPA."). The Court need not resolve this issue today, as all six of the plaintiff's independent CUTPA claims fail on their merits.

"It is well settled that in determining whether a practice violates CUTPA we have adopted the criteria set out in the cigarette rule by the federal trade commission for determining when a practice is unfair: (1)Whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise - - whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers . . . ." *Journal Publishing Co., Inc. v. Hartford Courant Co.*, 261 Conn. 673, 695 (2002) (internal quotation marks omitted). "All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three. . . . Thus a violation of CUTPA may be established by showing either an actual deceptive practice . . .  or a practice amounting to a violation of public policy. . . . Furthermore, a party need not prove an intent to deceive to prevail under CUTPA" *Id.* (internal quotation marks omitted).

In the instant case, none of the plaintiffs' arguments pass the "cigarette rule." Claims of recklessness, violations of good faith and fair dealing, and the reinstatement and subsequent breach of contract of the plaintiffs' policy have already been addressed and either denied or found moot. While it is true that the Court has held that the

defendant violated the temporal requirements of Conn. Gen. Stat. §38a-343(a), the plaintiffs did not allege that as a CUTPA violation. Instead they argued a CUTPA violation through the impropriety of the certificate of mailing. Because the plaintiffs received actual notice, this argument is unavailing.

The plaintiffs also raise an argument alleging that the defendant violated CUTPA in 2009, "once it was beyond doubt that the cancellation was not 'effective' under Conn. Gen. Stat. §38a-343(a)." (Doc. # 62, at 56). The Court finds no merit in this argument. It was not determined at any point up to the time of this decision that the cancellation was not effective under Conn. Gen. Stat. §38a-343(a). It was certainly not beyond doubt. Accordingly, this Court denies the claims by the plaintiffs under CUIPA and CUTPA.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Summary Judgment (**doc. # 61**) is **GRANTED in part** and **DENIED in part**, and Defendant's Motion for Summary Judgment (**doc. # 60**) is **GRANTED in part and DENIED in part**.

The Court grants summary judgment in favor of the plaintiffs Thomas Lee and Gloria as to the First Count of the Amended Complaint. As to the First Count of the Amended Complaint, a declaratory judgment shall issue forthwith stating the following:

> Personal  automobile insurance policy No. AIG PCG 0007906716,
> issued to the plaintiffs Thomas Lee and Gloria Lee by the
> defendant AIG Casualty Company, is in force and effect for the benefit of
> the plaintiffs and was in force and effect on August, 3, 2008.

The Plaintiffs' Motion for Summary Judgment is denied with regard to all other forms of relief the plaintiffs seek and as to the Second, Third, and Fourth Counts of the Amended Complaint.

27

The Court grants summary judgment in favor of the defendant AIG Casualty Company as to the Second, Third, and Fourth Counts of the Amended Complaint. The Defendant's Motion for Summary Judgment is denied as to the First Count of the Amended Complaint.

The Clerk of the Court shall close this file.

**SO ORDERED** this    24th    day of January, 2013.

_____/s/ DJS_____
**DOMINIC J. SQUATRITO**
**UNITED STATES DISTRICT JUDGE**